## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SIMPLEX, INC.,<br>an Illinois Corporation, | ) <br> ) <br> ) | |
|    Plaintiff, | ) <br> ) | |
|    v. | ) | No. 12-3101 |
| GLOBAL SOURCE ONE<br>INTERNATIONAL, INC., a<br>California Corporation; and<br>AMERICAN GUARD SERVICES,<br>INC., a California corporation, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
|    Defendants. | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause comes before the Court on the Motion for Summary Judgment (d/e 42) filed by Defendant American Guard Services, Inc. (AGS). AGS also filed a Request for Judicial Notice in Support of Motion for Summary Judgment (d/e 43), which asks the Court to take judicial notice of the Amended Complaint (d/e 19) and the Amended Answer and Cross Claim (d/e 36).

The Request for Judicial Notice (d/e 43) is GRANTED. The

Motion for Summary Judgment (d/e 42) is DENIED. The Illinois

Credit Agreements Act does not apply to Simplex's claim, and for

purposes of summary judgment, the Court finds that the Statute of

Frauds is satisfied. In addition, genuine issues of material fact

remain whether Global Source One International, Inc. (GSO) had

the apparent authority to act on behalf of AGS.

## I. BACKGROUND

On September 6, 2012, Plaintiff Simplex, Inc. filed an

Amended Complaint against Defendants GSO and AGS. See Am.

Compl. (d/e 19). Simplex has since obtained a default judgment

against GSO. See Opinion (d/e 34).

In the Amended Complaint, Simplex brings two causes of

action against AGS: breach of contract and fraudulent inducement.

Generally, Simplex alleges that GSO purchased four Titan 350 load

banks from Simplex for delivery to the United State Navy at

Portsmouth Naval Shipyard for $137,480. As part of the conditions

of sale of the load banks to GSO, AGS purportedly agreed to

guarantee the payment of GSO to Simplex. The U.S. Navy made

payment to GSO for the load banks.  However, neither GSO nor AGS paid Simplex for the load banks.  Simplex also alleges that AGS made false statements to Simplex that AGS would guarantee GSO's debt to induce Simplex to ship the load banks without first receiving payment from GSO.

Simplex bases its claim that AGS guaranteed GSO's debt on, in part, two items: (1) an undated Credit Information form and (2) a Cross Corporate Guarantee[1] letter bearing the date "12/1/2010." See Am. Compl., Exhibit 4 (d/e 19-4), Exhibit 5 (d/e 19-5) (copies of these two documents are attached to this Opinion).  The Credit Information form bears the AGS logo at the top and bottom of each page.  The form is signed by Sherif Assal, identified as the chairman of AGS.  The form is undated, but contains the notation "Revised: 12-14-10" at the bottom of the page.  The Credit Information form

─────────────────

[1] The term "guarantee" is typically the term used, and the term is often seen in the context of assurance of quality and performance. See Black's Law Dictionary 772 (9th ed. 2008), quoting Bryan A. Garner, A Dictionary of Modern Legal Usage 394 (2d ed. 1995).  The term "guaranty" is "used primarily in financial and banking contexts in the sense 'a promise to answer for the debt of another.'"  Id.  However, the term "guaranty" is rarely seen in nonlegal writing.  Id.  The Court will use the term "guarantee" for simplicity and consistency.

contains information about AGS, including owner/officer information, bank reference information, and trade reference information.  In addition, the form provides: "Our company, - American Guard Services, Inc. City CARSON  State CA hereby authorizes the bank to release financial information on our account(s) to _____.  We are presently in the process of establishing credit with them."  Am. Compl., Exhibit 4, p. 3 (d/e 19-4).

The Cross Corporate Guarantee letter bears the AGS logo at the top and bottom of the page.  Am Compl., Exhibit 5 (d/e 19-5). The letter provides that AGS acquired GSO and that GSO is a subsidiary of AGS.  The letter further provides that AGS will cross guarantee GSO and that the account will be set up under GSO. The letter requests credit terms of net "30 days +"and a line of credit of "$25,000+."  The date "12/1/2010" is typewritten at the bottom of the page. The bottom of the letter bears the typewritten name "Philllippe Georges H.," identified as Global Operations Manager with the email address of pgh@globalsourceoneint.com.

Simplex's credit manager, Jill Debrey, who was involved in the sale of the load banks to GSO, submitted an affidavit in opposition to AGS's Motion for Summary Judgment.[2]  <u>See</u> Debrey Aff. (d/e 45-3).  Debrey states that she received the Credit Information form and the Cross Corporate Guarantee letter at the same time on April 11, 2014.  Debrey Aff. ¶5.  Debrey stated: "It was apparent to me that the individuals I was dealing with had the authority to make the representations they made concerning the relationship between GSO and AGS."  Debrey Aff. ¶ 2.  At the time of the transaction, both AGS and GSO operated at the same address.  Debrey Aff. ¶ 3.  Debrey relied on the representations of the Cross Corporate Guarantee by AGS in extending credit for the purchase of the equipment.  Debrey Aff. ¶ 7.

---

[2] AGS asserts that Debrey's Affidavit fails to authenticate any documents and does not state whether Debrey had personal knowledge.  <u>See</u> Reply, p. 4.  The Court finds the affidavit does provide that the statements are made on personal knowledge and sufficiently authenticates the correspondence attached as Exhibit 1 to the affidavit.  <u>See</u> Debrey Aff. ¶ 1 (stating that Debrey was involved in the transaction giving rise to the lawsuit and participated in the correspondence as reflected in Exhibit 1).  Likewise, Simplex's request that the Court not consider the declaration of attorney Edmond Salem is denied.

AGS supports its motion for summary judgment with, among other evidence, the declaration of Sherif Assal. Assal Decl. (d/e 42-5). Assal asserts that he is the vice president of AGS. Assal Decl. ¶ 2. GSO is not and was not a related entity to AGS, and GSO is not and was not a subsidiary of AGS. Assal Decl. ¶ 3.

Assal states he was chairman of GSO from December 2010 until April 18, 2011 and was not affiliated with GSO during the time the transaction for the sale of load banks occurred with Simplex. Assal Decl. ¶ 4. Assal asserts that no one from AGS made statements or representations to Simplex asserting that AGS would guarantee the debt of GSO for the purchase of the Load Banks. Assal Decl. ¶ 7. According to Assal, GSO had a copy of AGS's Credit Information form from dealings between GSO and AGS that predated the sale of the load banks with Simplex. Assal Decl. ¶ 10. Assal asserts that GSO had provided AGS's credit information to Simplex without Assal's or AGS's knowledge. Assal Decl. ¶ 10. Assal asserts that Georges, the global operations manager for GSO, never had authority from AGS to execute a Cross Corporate guarantee on behalf of AGS. Assal Decl. ¶ 14.

## II. JURISDICTION AND VENUE

Simplex asserts, and AGS does not dispute, that this Court has subject matter jurisdiction of the claims asserted in this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Simplex and the defendants and the amount in controversy exceeds $75,000 exclusive of interest and costs. The Court agrees.

Complete diversity exists. Simplex is a corporation organized and operated in Illinois, with its principal place of business in Springfield, Illinois. <u>See</u> Am. Compl. ¶ 1. Defendant AGS is a California corporation registered to do business in Illinois. <u>See</u> Am. Answer ¶ 3. A search for American Guard Services, Inc. on the California Secretary of State website reveals that AGS is a corporation organized in California with an "entity address" in Carson, California. <u>See</u> kepler.sos.ca.gov (also indicating a date of filing of October 1, 1997 and that the entity is active) (last visited July 1, 2014); <u>see also</u> Illinois Secretary of State website, www.cyberdriveillinois.com/departments/business_servicies/corp.html search for American Guard Services, Inc. showing AGS is a

foreign corporation, incorporated in California, with a status of "withdrawn") (last visited July1, 2014); <u>see also</u> 805 ILCS 5/13.45 (providing the procedure for a foreign cooperation to withdraw from the State of Illinois).

Defendant Global Source One International, Inc. was a California corporation with its headquarters in California. <u>See</u> Am. Compl. ¶ 2. A search for Global Source One, International, Inc. on the California Secretary of State website reveals that GSO was organized in California but that it is currently "FTB suspended.[3]" <u>See</u> <u>kepler.sos.ca.gov</u> (last visited July 1, 2014). The website indicates that the "entity address" is Costa Mesa, California. <u>Id.</u> (also showing that the agent for service of process resigned June 17, 2013). Because Simplex is incorporated and has its principal place of business in Illinois and defendants are incorporated and have

_____

[3] The California Franchise Tax Board suspends businesses for various reasons, including failing to file tax returns and failing to file the annual Statement of Information with the Secretary of State. <u>See</u> <u>https://www.ftb.ca.gov/businesses/faq/index.shtml?WT.mc_id=Global_General_Sidebar_BE_FAQ</u> (suspension or forfeiture) (last visited July 1, 2014).

their principal place of business in California, complete diversity exists between Simplex and the defendants.

Simplex also alleges that Defendants owe $137,480 for the load banks purchased. Therefore, the amount in controversy exceeds $75,000 exclusive of interest and costs.

Venue is proper in this district because a substantial part of the events giving rise to the claim occurred in Springfield, Illinois. 28 U.S.C. § 1391 (b)(2). Moreover, Simplex's Conditions of Sale referenced in the invoices and included as part of the transaction contained a forum selection clause providing that the judicial forum shall be the "circuit court of Sangamon County, Illinois, or the Federal Court, Central Region, Illinois." Am. Compl. ¶¶ 8, 9, and Exhibit 1, Conditions of Sale (d/e 19-1); Am. Answer (d/e 36) (admitting the venue allegations).

Finally, the parties do not dispute that Illinois law applies. See Am. Compl., Exhibit 1, Conditions of Sale (providing that "[a]ctionable disputes shall be under the laws of the State of Illinois"); Auto–Owners Ins. Co. v. Websolv Computing, Inc., 580 F.3d 543, 547 (7th Cir.2009) (holding that "[w]e honor reasonable

choice-of-law stipulations in contract cases regardless of whether such stipulations were made formally or informally, in writing or orally"); <u>Wood v. Mid–Valley Inc.</u>, 942 F.2d 425, 427 (7th Cir.1991) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies").

### III. LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The movant bears the initial responsibility of informing the court of the basis for the motion and identifying the evidence the movant believes demonstrates the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  No genuine issue of material fact exists if a reasonable jury could not find in favor of the nonmoving party.  <u>Brewer v. Bd. of Trs. of the Univ. of Ill.</u>, 479 F.3d 908, 915 (7th Cir. 2007).  When ruling on a motion for summary judgment, the court must consider the facts in the light most favorable to the nonmoving party, drawing all

reasonable inferences in the nonmoving party's favor.  <u>Woodruff v. Mason</u>, 542 F.3d 545, 550 (7th Cir. 2008).

## IV. ANALYSIS

AGS moves for summary judgment asserting that Simplex is barred by the Illinois Credit Agreements Act and the statute of frauds from bringing a claim against AGS for breach of guarantee and fraudulent inducement.  AGS also asserts that AGS is entitled to summary judgment as a matter of law on Count IV because Simplex cannot prove the essential elements of the claim.  Specifically, AGS asserts that AGS never executed a guarantee agreement with Simplex and that the person who executed the Cross Corporate Guarantee letter was a GSO representative.

A.    <u>The Illinois Credit Agreements Act Does Not Apply</u>

AGS first argues that Simplex's breach of contract claim (Count II) and fraudulent inducement claim (Count IV) are barred by the Illinois Credit Agreements Act, 815 ILCS 160/1 et seq. Simplex responds that the Act does not apply because neither Simplex nor AGS was a creditor as defined by the Act.

The Illinois Credit Agreements Act defines "credit agreement" as "an agreement or commitment by a creditor to lend money or extend credit or delay or forbear repayment of money not primarily for personal, family, or household purposes, and not in connection with the issuance of credit cards."  815 ILCS 160/1(1).  A creditor is "a person engaged in the business of lending money or extending credit."  815 ILCS 160/1(2).  The Act defines a debtor as "a person who obtains credit or seeks a credit agreement or claims the existence of a credit agreement with a creditor or who owes money to a creditor."  815 ILCS 160/1(3).

The Act precludes debtors from maintaining an action "on or in any way related to a credit agreement" unless the agreement is in writing, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.  815 ILCS 160/2; First Nat'l Bank in Staunton v. McBride Chevrolet, Inc., 267 Ill. App. 3d 367, 372 (1994) ("There is no limitation to the type of action by a debtor which are barred by the Act, so long as the action is in any way related to a credit agreement").  The writing requirement "is a strong

form of the statute of frauds." Help at Home, Inc. v. Medical Capital, L.L.C., 260 F.3d 748, 754 (7th Cir. 2001).

AGS argues that the Act applies because Simplex extended credit to GSO when Simplex sold load banks to GSO and gave GSO 30 days to pay. AGS Reply at 5 (d/e 46). AGS further argues that the alleged guarantee agreement, when set forth as a condition precedent, is part of the comprehensive credit agreement between the parties and is, therefore, governed by the Act. AGS Mot. for Summ. J., at 10 (d/e 42).

However, even if this Court accepts that Simplex extended credit to GSO, thereby making Simplex a "creditor" under the Act, and even if the original contract and the guarantee are considered "credit agreements" under the Act, the Act still does not apply. See First Nat'l Bank, 267 Ill. App. 3d at 372 (finding that bank officer's promise that defendants could wait until Monday to make a deposit to cover a check was essentially an offer of credit and defendants' acceptance of this offer formed a credit agreement); Bank One, Springfield v. Roscetti, 309 Ill. App. 3d 1048, 1058 (1999) (the guarantee and the note, together with other documents, constituted

the comprehensive credit agreement because the guarantee was a condition precedent of the loan and the loan would not have been made without the guarantee). Section 2 of the Act provides only that a <u>debtor</u> may not maintain an action related to a credit agreement unless the agreement sets forth the relevant terms and conditions and is signed by the creditor and debtor. 815 ILCS 160/2.

A writing signed by both parties is not required for a <u>creditor</u> to maintain an action related to a credit agreement. <u>Household Commercial Financial Servs. Inc. v. Suddarth</u>, No. 01 C 4355, 2002 WL 31017608 (N.D. Ill. Sept. 9, 2002) (noting that "the [Act], however, does not by its plain language place any restrictions on the actions of creditors"). Here, Simplex, the purported creditor, is maintaining the action seeking to enforce the guarantee. Therefore, the Act does not apply, and Simplex does not need a writing signed by both Simplex and AGS to be able to maintain its action. The Act only bars a debtor from maintaining an action related to a credit agreement unless the agreement is signed by both the creditor and the debtor. Simplex is not the debtor.

B.    <u>Simplex's Claims are Not Barred by the Statute of Frauds</u>

AGS also argues that the Statute of Frauds bars Simplex's claims. AGS asserts that the Cross Corporate Guarantee letter was not signed by any party to the action and, therefore, fails to comply with the Statute of Frauds.

Simplex responds that all of the documents that make up the understanding of the parties must be considered when determining whether the Statute of Frauds is satisfied. Simplex asserts that the guarantee letter must be considered together with the Credit Statement form signed by Sherif Assal. Simplex also argues that material facts in the record justify a reasonable inference that GSO had the apparent authority to bind AGS to the contract with Simplex.

The Statute of Frauds requires that a guarantee be in writing and signed by the party to be charged:

> No action shall be brought . . . whereby to charge the defendant upon any special promise to answer for the debt . . . of another person . . . unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized.

740 ILCS 80/1.  In addition, the writing must contain all of the essential terms of the contract such that parol evidence is not needed to prove the terms of the contract or the intention of the parties.  See Prodromos v. Howard Sav. Bank, 295 Ill. App. 3d 470, 474 (1998); Mid–Town Petroleum, Inc. v. Dine, 72 Ill.App.3d, 296, 303 (1979).

The requirement that the agreement be in writing does not require a single piece of paper but can be satisfied by several documents.  Prodromos, 295 Ill. App. 3d at 474.  However, the "signed writing must refer expressly to the other writings, or the other writings must be connected, physically or otherwise, to show that they relate to the same contract."  Id.; see also Trustmark Ins. Co. v. General & Cologne Life Re of Am., 424 F.3d 542 (2005) (applying Illinois law).

The writings in this case include the Cross Corporate Guarantee letter and the Credit Information form.  The Cross Corporate Guarantee letter contains the terms of the guarantee agreement: AGS will cross guarantee GSO and the account will be

set up under GSO.  The letter also requested credit terms of net 30 days + and a line of credit of $25,000+.

An agreement to guarantee another's debt does not require a particular form of language.  McCracken v. Olson Cos., Inc., 149 Ill. App. 3d 104, 113 (1986).  Therefore, for purposes of summary judgment, the Court finds that the Cross Corporate Guarantee letter sets forth the terms of the guarantee.

Both the Cross Corporate Guarantee and the Credit Information form are signed.  The Cross Corporate Guarantee is signed by a representative of GSO.  Although the representative's name is typewritten, "signed" can mean any mark that indicates that the document has been executed by the party to be charged. See Roti v. Roti, 364 Ill. App. 3d 191, 196 (2006) (noting that "marks of many different sorts may qualify as signatures" so long as the mark indicates the document has been executed by the party to be charged); see also, e.g., Just Pants v. Wagner, 247 Ill. App. 3d 166, 174 (1993) (a document may be signed "in a multitude of ways, only one of which is a handwritten subscription").

The Credit Information form bore the signature of Sherif Assal, the chairman of AGS. The Cross Corporate Guarantee and the Credit Information form are physically connected because they were submitted to Simplex together on April 11, 2011. The documents are also connected in the sense that all of the pages contain the AGS logo and bear dates in December 2010. See Credit Information form (containing the notation "Revised: 12-14-10"); Cross Corporate Guarantee letter (containing the date "12/1/2010" typewritten at the bottom of the page). Therefore, for purposes of summary judgment, the Court finds the Statute of Frauds satisfied.

C.    Questions of Fact Remain About Whether GSO Had the Apparent Authority to Bind AGS

AGS also argues that AGS is entitled to summary judgment on Simplex's fraudulent inducement claim because Simplex cannot prove the essential elements of the claim. AGS argues that no one from AGS made any false statement of material fact and that Simplex cannot prove reasonable reliance. Simplex responds that questions of fact remain about whether GSO had the apparent authority to bind AGS to the contract with Simplex.

Apparent authority arises when the principal holds an agent out as possessing the authority to act on the principal's behalf and a reasonable person, exercising diligence and discretion, would assume that the agent had the authority in light of the principal's conduct. <u>Zahl v. Krupa</u>, 365 Ill. App. 3d 653, 661 (2006). The words and conduct of the alleged principal establish the agent's authority, not the words and conduct of the alleged agent. <u>Id.</u>

The fact and extent of the agency relationship can be established by circumstantial evidence. <u>Hofner v. Glenn Ingram & Co.</u>, 140 Ill. App. 3d 874, 880 (1986). "Where the evidence is conflicting, the question of whether an agent is authorized to act is a question of fact to be submitted to a jury." <u>Lynch v. Board of Educ. of Collinsville Cmty. Unit Dist. No. 10</u>, 82 Ill. 2d 415, 427 (1980).

In this case, GSO submitted a set of documents to Simplex that bore the AGS logo and indicated that AGS would cross guarantee GSO. As part of that set of documents, GSO also submitted a Credit Information form signed by the chairman of AGS, containing information about AGS, and authorizing "the

bank" to release financial information for the purpose of establishing credit. Taken together, and viewed in the light most favorable to Simplex, a genuine issue of material fact remains whether GSO was clothed with AGS's authority when the Credit Agreement form signed by the chairman of AGS was sent to Simplex along with the Corporate Guarantee letter.

## V. CONCLUSION

For the reasons stated, AGS's Motion for Summary Judgment (d/e 42) is DENIED. This case remains set for a Final Pretrial Conference on August 4, 2014 at 2:30 p.m. and a jury trial on August 19, 2014 at 9:00 a.m. The parties are reminded to comply with Local Rule 16.1 regarding final pretrial conferences. The proposed final pretrial order and all pretrial motions shall be submitted to the Court by noon on July 25, 2014. Objections to jury instructions, exhibits, and witnesses, as well as responses to any pretrial motions, shall be filed, with citation to authority, by noon on July 30, 2014. The parties shall bring their marked exhibits to the Final Pretrial Conference.

ENTER: July 3, 2014

FOR THE COURT:

<u>s/Sue E. Myerscough</u>
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE



American Guard Service,
Inc.

1299 E. Artesia Blvd., Ste
200

310-645-6200

310-645-6233

10/22/2010

**American Guard Services, Inc. (AGS)** is a California Corporation, founded and owned by Ms. Sherine Assal and Mr. Sherif Assal, the founding Principals.

American Guard Services, Inc. is a full service Security Guard Company and the company is under the NAICS Code 561612 Security Guards and Patrol Services. The company is a Prime Government Contractor and is currently approved under the Federal Supply System as a Security Contractor. Average Sales for the last three years is under $31,000,000. American Guard Services, Inc. has its Corporate Headquarters located at 1299 E. Artesia Blvd., Suite 200, Carson, CA 90746.

The Company also operates branch offices in San Diego CA, Miami, Ft Lauderdale, and Cape Canaveral FL, Las Vegas NV and Honolulu, Hawaii.

American Guard Services, Inc. has been active in the operation of Cruise Line Terminals at the Ports of Los Angeles, San Diego, Miami, New Orleans, and San Juan, PR. These Port Security Contracts dealing with the Cruise Ship Terminals have put us in direct contact with the U.S. Coast Guard, Customs and Immigration, and Department of Homeland Security.

EXHIBIT

4



# Credit Information

## COMPANY INFORMATION:

| Firm Name: | American Guard Services, Inc. | Federal ID# | | | |
|---|---|---|---|---|---|
| Corporation Name: | American Guard Services, Inc. | Ownership | Corporation | | |
| Business Address | 1299 E. Artesia Blvd., Ste 200 | Public/Private: | Private | | |
| City: | Carson | State: | CA | Zip: | 90746 |
| Phone Number: | 310-645-6200 | Fax: | 310-645-6233 | | |
| Submitted By: | | Phone: | | | |
| Email Address: | | Fax: | | | |
| Website Address: | Americanguardservices.com | | | | |
| Cage Code: | 1SZD3 | SIC Code: 73810105 | | | |
| Duns# | 00-5122853 | Reseller's Permit: 101-574696 | | | |

## OWNER/OFFICER INFORMATION

| Name: | Sherine Assal | Title: | Principal | Social Security# | |
|---|---|---|---|---|---|
| Address: | 3354 Palo Vista Dr. | City: | Rancho Palos Verdes | State | CA |
| | | | | Zip Code: | 90275 |
| Name: | Sherif Assal | Title: | Principal | Social Security# | |
| Address: | 3101 Gardenia Lane | City: | Yorba Linda | State: | CA |
| | | | | Zip Code: | 92886 |

| Corporate Office | 1299 E. Artesia, Ste. 200 Carson , CA 90746 Phone: 310-645-6200 Fax: 310-645-6233 |
|---|---|
| Branch Office | |
| | Miami Branch 1007 N. American Way, Ste. 315 Miami, FL 33132 |
| | Fort Lauderdale Branch 2550 Eisenhower Blvd. Suite 326 Hollywood, FL |
| | Cape Canaveral Branch 7011 N. Atlantic Ave., Suite 100 Cape Canaveral, FL |
| | Hawaii Branch 677 Ala Moana Blvd., Suite 725 Honolulu, HI |

## BANK REFERENCE INFORMATION

| Bank/Branch | California Bank & Trust | Phone: | 213.593.2080 | Fax: | 213.229.4078 |
|---|---|---|---|---|---|
| Address: | 101 South San Pedro Street | City: | Los Angeles | State: | CA |
| Contact: | Anthony Spinogatti | VP-Asset Based Lending | | Zip : | 90012 |
| Account#: | | | | | |

## TRADE REFERENCE INFORMATION

| Name: | Enterprise Fleet Services Phone: 310-817-7377 | | | | |
|---|---|---|---|---|---|
| Address: | 17210 South Main Street | City: | Gardena | State: | CA |
| | | | | Zip : | 90248 |
| Line of Credit/Terms: | | | Account #: Account# | | |
| Contact: Gia Madatyan | Fleet Cars | | | | |

| Name: | BearCom Phone: 800-731-2377 | | | | |
|---|---|---|---|---|---|
| Address: | 5235 NW 33rd Ave. | City: | Fort Lauderdale | State: | FL |
| | | | | Zip Code: | 33309 |
| Line of Credit/Terms: | | | Account #: | | |
| Contact: Matt Klass | 2 Way Radios | | | | |

Revised: 12-14-10



AMERICAN GUARD SERVICES, INC.



# Credit Information

| Name: | Wells Fargo Financial Leasing | Phone: | 866.497.0867 | Fax: | 888.241.4382 |
|---|---|---|---|---|---|
| Address: | P. O. Box 6434 | City: | Carol Stream | State: Zip : | IL 60197-6434 |
| Line of Credit/Terms: | $ 1.5 million     Multiple leases | | Account #: | | |

| Name | Marlin Leasing | Phone: | 888.236.2409 | Fax: | |
|---|---|---|---|---|---|
| Address: | P. O. Box 13604 | City: | Philadelphia | State: Zip : | PA 19101 |
| Line of Credit/Terms. | $250,000.00     Multiple Leases | | Account # | | |
| Name: | Szerlip & Co. | Phone: | 800.754.8273 X27 | Fax: | 973.912.5118 |
| Address: | 288 Main Street | City: | Millburn | State: Zip : | NJ 07041 |
| Contact: | Wayne Ruben | | | | |

Our Accounting Department is processed through a third party consultant *I Source Business, Inc.* the contact for any financial information or accounting issues is Mr. Sam Karawla @ 424-213-4031 or by email at: okarawia@isourcebusiness.com

Our company,    American Guard Services, Inc.            City   CARSON      State   CA

hereby authorizes the bank to release financial information on our account(s) to _____. We are presently in the process of establishing credit with them. Please provide all the necessary information and fax it directly to the company to expedite our credit application.

| | Sherif Assal | Chairman | |
|---|---|---|---|
| SIGNATURE | PRINTED NAME | TITLE | DATE |

By Signing this application we are certifying that the authorized signer on behalf of the business entity you we are representing, has the authority to legally bind such business entity, and that all of the information contained in this application is true and correct. Applicant is submitting this application for the purpose of obtaining credit, authorizing _____ to contact the trade references provided to obtain any information pertaining to the applicant's credit worthiness. I agree to the above terms of information.



AMERICAN GUARD SERVICES, INC.



## Cross Corporate Guarantee

*Please note that our Historical Financials and References provided will reflect our Ability and Reputation*

To whom it may concern,

American Guard Services (AGS) has been in business for 12 years. We have over 4000 employees situated over multiple offices located in California, Florida, Louisiana, Hawaii, Nevada, Alaska and Puerto Rico. We are a financially sound organization and we are considered leaders in our industry.

As part of our strategic management initiatives, AGS acquired Global Source One Int. (GSO) last year with intention of growing both companies by investing capital, human resources, real-estate, technology and know-how.

GSO a subsidiary of AGS is focused on our client the department of defense (DOD) / Federal Government. We are considered experts in managing the various compliance, quality assurance, fulfillment and value added services (Packaging, Labeling, Bar-coding, Special Instructions) requirements.

Recent Developments and accomplishments:

- Opened up a new additional office in Carson, CA
- Doubled the number of employees
- Signed on and became authorized distributors for several fortune 500 manufacturers
- Established the financial/credit infrastructure with leading financial institutions to support the fast growth
- Achieved an astonishing growth of 400% year-to-date with estimated revenues in excess of $10 Million

Cross Corporate Guarantee Notice:

- Global Source One Int. Inc. (GSO) is a one year old company.
- **American Guard Services (AGS) will cross guarantee GSO.**
- The account will be set up under GSO.

Client Credit/Payment terms:

- Our payment terms with our client/Federal Government is net 30 days.
- Terms include payment upon partial delivery to our client/Federal Government on a lot of our contracts.
- Currently, we are set up on a (net 45 days) credit terms with most our existing manufactures.

Request:

- **Credit term Net 30 days +**
- **Line of credit $25,000 +**

Thank you,

Philippe Georges H.
Global Operations Manager
pgh@globalsourceoneint.com
(424) 213 4112

EXHIBIT
5

12/1/2010



AMERICAN GUARD SERVICES, INC.